## Bair & Gazzam v. Wilson.

*Corporations—False certificate as to paid-in capital—Cause of action— Unpaid subscriptions—Creditor's bill—Action for deceit.*

A bill in equity alleged that by reason of a certificate of the subscribers to the capital stock of a corporation ten per cent of the capital stock of the corporation had been paid in in cash, complainants gave credit on the faith of the certificate believing that the law had been complied with, but that only $1,000 instead of $30,000 had been paid in ; the prayers were (1) for an accounting ; (2) that the unpaid balance of ten per centum or so much thereof as may be necessary to pay the debts of creditors may be decreed to be paid over ; (3) general relief.

It appearing that the defendant, appellant, had not paid a subscription of $500 to the capital stock, the court below held in a decree, affirmed by the Superior Court, that while under Patterson v. Franklin, 176 Pa. 612, the right to complain is in the individuals who suffered, and the right of action extends only to the individual loss of the particular person injured, the decree recommended by the master that the defendants pay to a receiver to be hereafter appointed such sums of money as may be necessary to pay all the creditors of the company who join in this bill, and prove their claims before the receiver not to exceed the sum of $29,000, cannot be approved, but that the bill might be maintained for the purpose of compelling the defendants to pay their unpaid subscriptions.

No call for the payment of the subscription having been made the penalty imposed by the Act of April 29, 1874, sec. 11, P. L. 73, is not payable and interest therefore can only be charged from the date of the decree.

132        BAIR & GAZZAM' v. WILSON.

Argued April 24, 1900. Appeal, No. 96, April T., 1900, by John H. Wilson in suit of Bair & Gazzam, Limited, against John H. Wilson, Walter S. Jarboe et al., from decree of C. P. No. 3, Allegheny Co., May T., 1892, No. 54, decreeing payment on unpaid subscriptions to corporate stock. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by BEAVER, J.

Exceptions to master's report. Before McCLUNG, J.

Plaintiff's bill set out that defendants, Jarboe, Warden, Wilson and Hathaway, were named as four of the subscribers to the charter of the National Wrapping Machine Company. Jarboe, Warden, Shields, Wilson and Hathaway certified that $30,000, being ten per cent of the capital of the intended corporation, which was $300,000, had been paid in to Shields, the treasurer of the said corporation; that letters patent were duly issued to the corporation; that defendant recovered a judgment against the corporation in the sum of $4,281.66; that the application for the charter so certified to by defendants, the subscribers, was false in this : that it stated that the sum of $30,000 had been paid in cash to the treasurer of the corporation, whereas in truth and fact, said sum had not been paid into the treasury and that no portion in excess of $5,000 had been so paid in. If the said sum of ten per cent, or $30,000, had been paid into the treasury, the corporation would have been enabled to pay its debts in full. That plaintiff exhibited this bill in behalf of themselves as well as for all creditors of said corporation who may see fit to unite herein and pay their share of the costs of the proceeding.

The prayer was for an accounting and that the unpaid balance of ten per cent, or so much thereof as may be necessary to pay the said judgment, and costs and debts of other creditors, etc., could be paid to said creditors or to a receiver, for the use of orators and such other creditors ; general relief.

To this bill defendants, John H. Wilson and Walter S. Jarboe, demurred, setting up, inter alia, that " the bill does not show that the plaintiffs were misled by the alleged false statement or certificate referred to and set forth in the said bill to their injury," whereupon plaintiffs by leave of court amended their bill as follows :

1. The defendants, Walter S. Jarboe, John H. Wilson, David R. Warden, John G. Hathaway and Thomas L. Shields, knew at the time of the making of such certificate that ten per cent of the capital stock of the National Wrapping Machine Company, or $30,000, had been paid into the treasury of the corporation in cash.

2. Plaintiffs knew that the capital stock of said corporation was $300,000 at the time they gave the credit, and believed that the law had been complied with and ten per cent paid in cash, as required, and gave their credit on faith thereof.

3. Plaintiffs did not know that such was not the case until long after they had given such credit.

An answer was filed and the case then went to an examiner and master, and the master made the following findings of fact:

1. That the National Wrapping Machine Company was organized as a corporation, and that letters patent were granted and duly recorded; that the application provided for a capital stock of $300,000, ten per cent of which was certified to having been paid into the treasury in cash.

2. That the plaintiff in the case dealt with the defendants on the supposition and belief that the contents of the application as set forth were true; that there was $30,000 in the treasury of the company, and that they did so to their detriment from the fact that they obtained judgment against the corporation for the sum of $4,281.66, with interest from December 12, 1890, upon which said judgment a writ of fi. fa. issued at No· 160, April term, 1890, and sheriff made return thereon; that the sum of $7.00 only was realized from the execution.

3. That the $30,000 or ten per cent of the capital stock of the National Wrapping Machine Company certified to in the application for the charter as having been paid in cash into the hands of the treasurer was, as a matter of fact, not paid in in a bona fide manner at that time.

4. That the only money that was paid in on account of the said ten per cent at the time of the granting of the charter was $500 by O. S. Richardson, and $500 by D. R. Warden. Jarboe and Wilson admit that they did not pay their shares. While there is no evidence from Thomas L. Shields, it is apparent from the testimony and exhibits, that he did not pay $27,500 into the treasury. The total credits in the bank book, ex-

hibit "No. 1," amounts to $9,062.30, of which amount $3,725.87 was made up of discounts. The balance was evidently from the sale of what is called the treasury stock.

5. The master finds that there is a sum of $29,000 due the corporation on account of the said ten per cent.

The master also found the following conclusions of law:

1. That the defendants individually are liable for so much of the $29,000 unpaid of the ten per cent certified to have been paid as will pay the debts of the National Wrapping Machine Company.

2. It is contended that as an action of deceit would lie, that therefore a court of equity has not jurisdiction of the case. The bill prays for discovery and an account of the ten per cent alleged to have been paid. There is no question as to the insolvency of the corporation and the exhaustion of its assets. It is necessary to ascertain how much of the ten per cent was paid in, who all the creditors are, and the amount of the indebtedness.

The master recommended the following form of decree:

And now, to wit: the      day of      , 1896, it is ordered, adjudged and decreed that the defendants are respectively liable to the plaintiffs and such parties as are joined with them in the bill for the unpaid balance of the ten per cent of the capital stock of the National Wrapping Machine Company to the extent of the sum of $29,000. And it is further ordered and decreed that      be appointed receiver of the National Wrapping Machine Company to receive said sums of money.

It is further ordered that the defendants held liable by the master's report do respectively pay unto the said receiver an amount of money sufficient to pay the debts of said corporation not to exceed, however, the sum of $29,000. That upon said payment the defendant held liable in the master's report be discharged from any and all further liability by reason of the nonpayment of the ten per cent of the capital stock of the National Wrapping Machine Company. The costs of these proceedings to be said by the defendants, including the master's fee.

Exceptions having been filed to the master's report, the court, McClung, J., filed the following opinion:

There is abundant evidence to justify the finding of the master that of the $30,000 in cash certified to have been paid to the treasurer of the company, but $1,000 was actually paid, and it is also perfectly apparent, that the parties who made the certificate knew, at the time of making it, that it was false.

This $29,000, if paid in, would have made this company a solvent one, amply able to pay its debts. This statement was made first to the executive department of the state government for the purpose of showing that the parties were entitled to a charter. "After letters patent have been issued, the statement, with all its indorsements, must be recorded in the proper county for the information of the public, in order that the fact of incorporation may be known and the credit to which the corporation is entitled may be intelligently judged of by all persons who may have occasion to do business with it." Opinion of WILLIAMS, J., in Patterson v. Franklin, 176 Pa. 612.

Under these circumstances, if left to our own devices, we would have been disposed to hold that the parties knowingly and falsely certifying to the possession by the company of this means of paying its debts, should be compelled to make good their certificate so far as possible, by themselves assuming the liability. Just as if they had subscribed for stock on behalf of others whom they had no authority to represent, and that being so liable, creditors could in equity compel the payment of so much of the fund as would discharge their claims. We would thus have come to the same conclusion as the master, though possibly not by precisely the same course of reasoning.

Since the case was urged, moreover, our attention has been called to the above case of Patterson v. Franklin, 176 Pa. 612, which seems to forbid such a conclusion.

The doctrine of that case seems to be that persons so falsely certifying are only liable in actions for deceit, to the particular parties actually misled by the falsehood.

That being the law these defendants cannot be held liable in the present proceedings for the $29,000 or any portion of it, because (1) none of the plaintiffs can testify that they actually examined the certificate and saw that the defendants had signed it; and (2) had they done so, the remedy of such creditors would have been each by an action at law (in deceit), and a bill in equity for their joint benefit cannot be maintained.

The bill can, however, be maintained for the purpose of compelling the defendants to pay their unpaid subscriptions. Let a decree be prepared in accordance with this opinion.

The court made the following decree referring the case back to the master:

[And now, to wit: February 20, 1897, this cause is referred back to George P. Hamilton, Esq., the master, to ascertain the amount of the unpaid stock subscriptions to the capital stock of the National Wrapping Machine Company and the amount of its indebtedness, and to whom the same is due, and to report the same to the court in accordance with the opinion filed by the court.] [1]

After which the following final decree was reported by the master and entered by the court:

[And now, to wit: May 26, 1899, this case came to be heard on the master's supplemental report, under decree of re-reference, and, after argument by counsel, it is ordered, adjudged and decreed that the exceptions filed to the supplemental report of the master be and are overruled, and that John H. Wilson pay the sum of $500, with interest from March 18, 1888, and Walter S. Jarboe pay the sum of $500, with interest from March 18, 1888; that said sums of money be paid to Bair and Gazzam, Limited, and S. Hamilton in proportion to their respective claims; that John H. Wilson and Walter S. Jarboe pay the costs of this proceeding, including the master's fee to be fixed hereafter.] [6]

John H. Wilson appealed.

*Errors assigned* among others were (1) in making the decree referring the case back to the master. (2) In holding that "the bill can, however, be maintained for the purpose of compelling the defendants to pay their unpaid subscriptions." (5) In adjudging and decreeing that John H. Wilson pay the sum of $500 and interest from March 18, 1888, and also in adjudging and decreeing that John H. Wilson pay any part of the costs of this proceeding. (6) In entering the final decree, reciting same.

*Johns McCleave*, for appellant.—The special prayers of the bill all relate to the ten per centum of the capital, and are based

upon the allegations of the bill in respect thereto.    There is a prayer for general relief, but the relief that may be granted under this prayer must be not only consistent with the relief specifically prayed, but must be sustained by the allegations of the bill: Del. & Hud. Canal Co. v. Penna. Coal Co., 21 Pa. 131, 146.

The bill could not have been so amended as to support the decree.    The Act of May 4, 1864, P. L. 775, relating to amendments in equity proceedings, gives the court power to permit amendments "in bills, answers, pleas or other matters, in the same manner as now obtains in common-law cases and practice."

Under this, no new or different cause of action or suit can be introduced by amendment: F. & M. Bank v. Israel, 6 S. & R. 292; Gardner v. Post, 43 Pa. 19; Royce v. May, 93 Pa. 454; Root v. O'Neil, 24 Pa. 326.

Even if the court could properly make a decree upon a bill, of which it had solemnly decided it had no jurisdiction, yet the decree is clearly erroneous in charging interest upon Mr. Wilson's subscription for five shares from March 18, 1888, the date the subscription was made.

No call has ever been made by the directors of the corporation, or by any other authority, for the payment of this subscription. It has never become due and payable until the entry of the decree herein.    Interest cannot, therefore, be charged.    See Act of May 9, 1889, P. L. 180.

*C. C. Dickey*, with him *J. W. Kinnear*, for appellees.—Under this state of facts, the appellant had no equities, and although the full measure of relief prayed for in the bill could not be granted, the court was of the opinion that he should make good his stock subscription.

The court did not say in the opinion, as suggested by appellant, that the bill could be "amended" for the purpose of compelling the defendants to pay their unpaid subscriptions.    What the court did say was this: "The bill can, however, be maintained for the purpose of compelling the defendants to pay their unpaid subscriptions.    Let a decree be prepared in accordance with this opinion."    Such decree was prepared and passed by the court.

The court allowed an accounting, in accordance with the

prayer of the bill, for that part of the ten per centum which the
defendants themselves had contracted to pay.   The final decree
was thus within the case made out by the bill and its prayers
for relief, and no new cause of action was introduced.

OPINION BY BEAVER, J., October 8, 1900 :

The plaintiffs in their bill allege that the defendant was one
of a number of subscribers to an application for a charter un-
der the incorporation act of April 29, 1874, P. L. 73, for a corpora-
tion to be called " The National Wrapping Machine Company."
That he, with others, had " certified that $30,000, being ten per
centum of the capital of the intended corporation, which was
$300,000, had been paid in cash to the treasurer of the said corpo-
ration."   The bill alleges in section 5 that " the application for
the charter so certified by the subscribers was false in this : it
stated that the sum of $30,000 had been paid in cash to the treas-
urer of the corporation and, upon information and belief, the
plaintiff alleges that in truth and in fact said sum had not been
paid in cash to the said treasurer and had not been paid into the
treasury of said intended corporation, and the amount actually
paid into the treasury of the intended corporation, at and prior
to the date of the subscription of said certificate did not exceed
the sum of $5,000, and the plaintiff charges, upon information
and belief, that no part of said ten per centum of said capital,
but the sum of $5,000, was ever paid into the treasury of the
said corporation, but the same remains unpaid."   The bill fur-
ther alleges the plaintiff's liability to pay the difference between
the amount actually paid into the treasury and the sum of
$30,000, being ten per centum of the intended capital, and prays :
" Second.  That the unpaid balance of said ten per centum, or
so much thereof as may be necessary to pay the said judgment
and costs and debts of other creditors who may become parties
hereto and establish their claims, may be decreed to be paid
over by the said defendants and every of them to your ora-
tor, and such other creditors, in payment and satisfaction of
their claims, or to a receiver of your honorable court, for the
use of your orators and such other creditors."

The master, after elaborate findings of fact and conclusions
of law, recommended a decree " that the defendants pay to a
receiver to be hereafter appointed such sums of money as may

be necessary to pay all the creditors of defendant corporation who join this bill and prove their claims before the receiver, not to exceed, however, the sum of $29,000."

The court below, under the dictum in Patterson v. Franklin, 176 Pa. 612, that "the right to complain is in the individuals who suffer, and the right of action extends only to the individual loss of the particular person injured, if a right of action exists," declined to approve the decree but, in an opinion filed, indicated that the bill might "be maintained for the purpose of compelling the defendants to pay their unpaid subscriptions," the master having discovered in the course of the testimony and having found as a fact that the appellant had subscribed for $500 of the stock of the company which had not been paid. There was no application to amend the bill, no direction to amend it, and it was not, in fact, amended, after the decree above quoted.

The allegation as to the certificate of the appellant of the payment of ten per cent of the capital stock, of its nonpayment and of the defendant's liability to pay the difference between the amount actually paid in and ten per cent of the stock, and the prayer based thereon, justified a decree, making him liable to pay so much as might be found due from him. Although the court refused to make a decree covering the full amount of the difference between ten per cent of the capital stock and the actual amount of cash paid into the treasury, this did not prevent it from making a decree for the payment of a less amount. The allegations of the bill and the prayers for relief justified the decree for the payment of the amount of stock subscribed for by the appellant, namely, five shares, at $100 per share, making $500. The facts necessary to sustain the decree were distinctly found by the master, upon careful examination of all the testimony in the case, and were approved by the court. We have no disposition, therefore, under our rule, to interfere with it, inasmuch as there was ample evidence to sustain the finding.

The final decree, however, directs the appellant to pay the sum of $500, with interest from March 18, 1888. Under the provisions of section 11 of the Act of April 29, 1874, P. L. 73, relating to corporations, "All subscriptions to the capital stock shall be paid in such instalments and at such times as the di-

rectors may require, and if default be made in any payment, the person or persons in default shall be liable to pay, in addition to the amount so called for and unpaid, at the rate of one half of one per centum per month for the delay of such payment." So far as appears by the testimony, no call was made by the directors. The penalty for nonpayment was not, therefore, payable, and interest should not have been charged against the appellant, except from the date of the decree, which was equivalent to a legal demand. No legal demand having been made upon the appellant for the payment of his subscription to the capital stock of the corporation, interest was not payable and should not have been charged against him.

The decree of the court below is, therefore, affirmed, except as to the payment of interest, which should commence May 26, 1899, the date of final decree, instead of March 18, 1888. The costs of this appeal to be paid by the appellant.